**BROWN v. MADISON PAINT CO.**

No. 5295.

Court of Appeal of Louisiana. Second Circuit.

Oct. 30, 1936.

David W. Thomas, of Minden, for appellant.

A. S. Drew, of Minden, for appellee.

TALIAFERRO, Judge.

Plaintiff in this in rem action seeks to recover the price paid by him for one barrel of Masticote Liquid Roofing material purchased from defendant, plus the cost of applying same and the freight thereon to Minden, La. He alleges that the material was sold to him under a guaranty that it would fulfill the purposes for which it was purchased; that it was placed on the roof of his residence under the direction and supervision of defendant's agent, through whom the material was ordered, and to his entire satisfaction; that the roof leaked worse after applying this liquid than it did prior thereto, of which fact defendant was promptly advised; and that defendant, recognizing its warranty obligations under said sale, shipped to plaintiff another barrel of the material, which was also applied under the personal supervision of said agent, but with no better result than that following the first application. He avers that he has amicably demanded of defendant a refund of the amount sued for.

Defendant being a nonresident, jurisdiction was effected through writ of attachment, accompanied by garnishment process, whereunder an amount due by John L. Garrett, a resident of Webster parish, to defendant, was seized by the sheriff.

In limine, defendant excepted to the court's jurisdiction and interposed exceptions of no cause and no right of action. The former was overruled. The latter were not passed on. Neither is urged here. Evidently all have been abandoned.

Answering, defendant challenges plaintiff's right to recover any amount from it under the guaranty sued on. It avers that the roofing material was sold to plaintiff and by him paid for in advance of delivery, strictly upon the conditions of said guaranty, wherein there is no promise to refund the price in the event of failure of the material to accomplish the ends for which purchased, but it does contain a promise to furnish enough thereof to repair any part of the roof which has failed to "stand up as guaranteed," after its application. Defendant specifically denies that any person was authorized by it to apply, direct, or supervise the applying of the roofing material either in the first or second instance, and therefore it is not bound by his actions, agreements, or representations beyond the express terms of the written guaranty under which the goods were sold. Defendant expressly denies any default on its part in

its obligations to plaintiff and avows its willingness now to carry out fully the covenant of warranty sued on.

There was judgment for plaintiff for the price of the material only, with recognition of the attachment and garnishment, and seizure thereunder.

Defendant prosecutes this appeal. Plaintiff does not ask for amendment of the judgment.

The written guaranty involved in this suit reads as follows:

"Masticote, Liquid Asbestos Roofing makes old worn-out leaky roofs like new and preserves new roofs. Guaranteed for ten years.—Beware of cheap coal tar roofing, insist on Masticote. It absolutely contains no coal tar. * * *

"Masticote Guarantee. Should Masticote fail to last for ten years from the date of application, and make a water-proof roof, we agree to furnish, without further charge, a sufficient quantity of Masticote to keep the roof in good condition for this length of time."

This guaranty contains no stipulation relative to the manner and method of applying, nor does it state at whose expense it should be applied. Plaintiff understood that it was his duty to bear the expense of the application. The agent agreed to and did supervise it, although his action in this respect was gratuitous. His principal was not obliged to have him do so.

■ Defendant's answer does not challenge the correctness of the method employed by plaintiff and his agents in applying the Masticote to his roof. This issue was raised for the first time in oral argument and in brief. The evidence does not convince us that this material was improperly or incompetently applied. Having paid cash for it and desiring a rainproof roof over his head, it is but fair to assume that plaintiff used every reasonable means to secure such a roof. However, within a few weeks a heavy rain fell and the roof did not withstand it. Leaks developed, the wall paper was damaged, and the inconveniences which usually follow such conditions were experienced. Being advised of the situation, defendant did not then contend that the material had been incompetently applied, but, on the contrary, shipped plaintiff several additional gallons. This was also used on the roof, but the results were wholly unsatisfactory, and again, being so advised, defendant shipped plaintiff 60 more gallons.

The testimony discloses that the roof leaked more after this large quantity of the liquid had been applied to it than previously. Plaintiff was forced to remove the original roofing and all of defendant's material placed thereon, and re-cover his home with wooden shingles in order to provide dry shelter for himself and family. The fact that more material was twice furnished without questioning such method of application argues strongly that there was no good ground for complaint on this score; and the fact that defendant now is willing to resume supplying the material to cure the shortcomings of the first, second, and third applications, does not accord with its present belated contention that the failure of the material to provide a waterproof roof was due to the manner of its application thereto, and not to the inefficacy of the material itself.

■ If we understand defendant correctly, its position is that regardless of the unsatisfactory results following the use of its material, the only obligation resting upon it is to continue to supply for the full contract term of ten years, if necessary, additional material; that its customer is expected to submit to personal inconveniences and damages to his property during this period and has no standing to recover the price he has paid for the initial material. We do not think this position is supported by the law of this state. Certainly no equitable principle sustains it. He got nothing for his money and certainly is justified in his effort to recover it. There was no assurance whatever that additional applications of the material would accomplish better results than the others.

■ Defendant contends that it has never been called upon to carry out its guaranty and that, not having been put in default, this suit against it is premature. The undisputed facts of the case negative this contention. Defendant was called upon twice to make good its guaranty and attempted to do so. What more effort should plaintiff put forth to place defendant in default? The last material was applied over twelve months after the first was. Was plaintiff obliged to continue to call upon defendant ad infinitum? We do not think so. The main object of putting a defaulting contracting party in mora is to afford him opportunity to comply with his contractual obligations, and when this has been done and he continues to default, though after futile efforts to obviate such, it is not incum-

bent upon the other party to indulge him indefinitely. He has the right to rely upon the rights the law affords him and sue for redress.

This suit from its very nature is a redhibitory action. It falls within the definition of that action laid down in article 2520 of the Revised Civil Code. The material purchased by plaintiff and resupplied to him was defective to the extent that it was useless for the purposes for which he purchased it, and utterly failed to measure up, even to a reasonable degree, to the efficacy, as roofing material, guaranteed by defendant.

We think the judgment appealed from is correct, and it is affirmed, with costs.

DREW, J., recused.